J-A09007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| MICHAEL J. BOGNIAK AND SARA WILSON-BOGNIAK, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| BYRON J. JESPERSEN AND JANET T. JESPERSEN, HUSBAND AND WIFE | : | |
| | : | |
| Appellants | : | No. 1138 WDA 2024 |

Appeal from the Judgment Entered August 21, 2024
In the Court of Common Pleas of Warren County Civil Division at No(s):
472 of 2021

BEFORE:  KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED: July 3, 2025**

Byron and Janet Jespersen appeal from the judgment that 1.56 acres of land belong to Michael Bogniak and Sara Wilson-Bogniak.  The trial court also declared the Jespersens' deed to the acreage to be null and void.  We affirm.

On July 17, 1830, Raymond Briggs purchased 493 acres of land in Pine Grove Township.  **See** Briggs' Deed, Warren County Deed Book D at 302.  His land was the common source out of which subsequent owners parceled the Bogniaks' and the Jespersens' adjoining properties.  **See** Plaintiffs' Ex. A at 1.  Mr. Briggs' tract of land also included the 1.56 acres in dispute.  **See id.**

The Jespersen family acquired a portion of Mr. Briggs' land.  In 1932, the Daugharthy family acquired nearly 100 acres of a neighboring portion of Mr. Briggs' land.  **See id.** at 1-2.  Both properties had the same "south line of the whole tract" formerly belonging to Mr. Briggs, but the Daugharthy property

went further north to Conewago Creek on its western boundary and the former property of Levi Akeley on its north.  *Id.* at 2.

Big Four Road traversed the southern third of the Daugharthy property and turned north where it intersected Smith Hill Road, just prior to reaching the Jespersen property.  ***See*** "Location Map" in Defendants' Ex. 14 below, where the Daugharthy property is gold, the Jespersen property is red, and Big Four Road is the purple line[1]:



_____

[1] The colors referenced herein are available when using a color printer or when viewing as a PDF or through an online legal research database.

The Daugharthys never surveyed their property. Nor did they include metes and bounds in the deeds transferring the land from one generation to the next. *See* N.T., 6/10/24, at 67.

Eventually, on February 7, 1980, the Daugharthys sold "all that portion [of their land] lying southerly of the Big Four Road" to the Ellington Hardwood Lumber, Inc. Daugharthys-to-Ellington Hardwood Deed at 1, Warren County Deed Book 416 at 1027. Attorney Pete Eaton[2], who drafted the Daugharthys-to-Ellington Hardwood Deed, added metes and bounds to the deed language. *See* N.T., 6/10/24, at 67. This was the first use of metes and bounds in the history of the Daugharthys' chain of title.

Attorney Eaton's metes and bounds started "at the southwest corner of lands of Daugharthy," ran north "to the Big Four Road" and then followed "easterly and northerly along said Road . . . to its intersection with the east line of the lands of Daugharthy . . . ." Daugharthys-to-Ellington Hardwood Deed at 1, Warren County Deed Book 416 at 1027. At this point, the metes and bounds reached the westernmost edge of the Jespersens' property, approximately where Big Four Road stopped curving to the northeast and went directly north. *See* "Location Map" in Defendants' Ex. 14 above.

From there, the metes and bounds headed back to the south, following "the east line of lands of Daugharthy . . . along lands of Jespersen, southerly about 42 rods, westerly about 5 rods and southerly about 105 rods to . . . the

---

[2] Attorney Eaton was deceased by the time this case came to trial.

- 3 -

southeast corner of lands of Daugharthy . . . ." Daugharthys-to-Ellington Hardwood Deed at 1, Warren County Deed Book 416 at 1027. The metes and bounds then headed west, on the southern line of the Daugharthy property, back to the southwest corner.

However, the Jespersen property did ***not*** turn easterly, about five rods. As a result, the metes and bounds left "the east line of lands of Daugharthy" and the "lands of Jespersen . . . ." ***Id.*** The five-rod jog to the west excluded a 1.56-acre, narrow triangle between the two properties. ***See*** Plaintiffs' Ex. B below, where the Daugharthy property north of Big Four Road is gold, the Jespersen property is red, the metes and bounds from the Daugharthy-to-Ellington Hardwood Deed are blue, and the 1.56-acre triangle is green:



The records of the Recorder of Deeds of Warren County did not reveal "any specific reason why [Attorney Eaton] would have added . . . the five-rod jog into the description." N.T., 6/10/24, at 68. In addition, Attorney Eaton described the metes and bounds as "being **all** that portion [of the Daugharthy property] lying southerly of the Big Four Road . . . ." Daugharthys-to-Ellington Hardwood Deed at 1, Warren County Deed Book 416 at 1027. (emphasis added). The Daugharthys did not expressly reserve the 1.56 acres to themselves, even though they expressly reserved the timber rights on the property for 15 months following the transfer of title. **See id.** Moreover, the Daugharthys did not file a subdivision plan with the county to parcel out the 1.56 acres. Nor did they pay taxes on the 1.56 acres or make any use of the narrow triangle for over 40 years thereafter.

On July 3, 2003, Ellington Hardwood sold its property to another logging company. On February 6, 2012, that logging company sold the property to King Properties, LLC, another logging company. During that period, on two occasions, the companies removed the timber from the property through the Jespersens' property. **See** N.T., 6/10/24, at 18.

Eleven years later, in 2021, King Properties entered into negotiations with the Bogniaks to sell the property to them. As part of that process, they had Scott Johnson survey the property south of Big Four Road for the first time. **See** N.T., 6/10/24, at 16. Mr. Johnson located the 1.56-acre, narrow triangle as being outside the 1980 metes and bounds that Attorney Eaton drafted in the Daugharthys-to-Ellington Hardwood Deed. This was the first

time anyone realized that Attorney Eaton's metes-and-bounds language created the narrow triangle. Despite this discovery, on May 10, 2021, the Bogniaks decided to buy the property from King Properties.

All deeds in the Bogniaks' chain of title adopted Attorney Eaton's metes-and-bounds description. Each deed also reiterated the intention to convey "*all* that portion [of the Daugharthy property] lying southerly of Big Four Road . . . ." Ellington Hardwood-to-King Timberlands Deed at 1, Warren County Deed Book 1281 at 132 (emphasis added); Dawn Timber Company[3]-to-King Properties Deed at 1, Warren County Deed Book 2161 at 267 (emphasis added); King-Properties-to-Bogniaks Deed at 1-2, Warren County Deed Book 2975 at 68-69 (emphasis added).

Soon after closing, Mr. Bogniak asked the Jespersens if he could remove timber through their land. In consideration for that license, the Jespersens demanded that the Bogniaks sell them "the ten acres adjoining [the Jespersens] property in between Smith Hill and Big Four Roads and that [the Bogniaks] not access the property via that [route] after removal of the timber." N.T., 6/10/24, at 19.

Mr. Bogniak rejected the Jespersens' counteroffer. Instead, a few days later, he used "the survey marks that were put in place and constructed a road from the top of Smith Hill [Road] and a landing area to remove timber."

---

[3] After acquiring the property, King Timberlands, LLC became known as Dawn Timber Company, LLC.

*Id.* Mr. Bogniak deliberately constructed the road north of the 1.56-acre, narrow triangle.

In July 2021, Mr. Jespersens again asked to buy the northernmost ten acres of the Bogniaks property. Mr. Bogniak again rejected the offer.

Then, on August 12, 2021, the Jespersens had Todd Hendricks survey the Jespersen property, as well as the eastern side of the Bogniaks' property. Mr. Hendricks located the five-rod jog at the top of the narrow triangle further north than Mr. Johnston had located it in his original survey for Dawn Lumber and the Bogniaks. Mr. Hendricks' survey made the narrow triangle slightly longer in area. Critically, Mr. Hendricks also placed part of Mr. Bogniak's newly constructed access road inside the narrow triangle. *See* Defendants' Ex. 14.

The Jespersens had Mr. Hendricks draft metes-and-bounds language for the slightly longer, narrow triangle, and their attorney put those metes and bounds into a new deed to convey the triangle to the Jespersens. They then sought out Erik Daugharthy, heir of the Daugharthy family, to see if he would "sell" the narrow triangle to them.

Meanwhile, on November 4, 2021, the Bogniaks filed this lawsuit to seek quiet title of the narrow triangle. The Jespersens filed preliminary objections. They objected to the form of action and claimed the Bogniaks were "not in possession of the [narrow triangle; thus], an action to quiet title [did] not conform to the rule of law." Preliminary Objections at 1. Instead, they contended the Bogniaks needed to bring an action for ejectment. *See id.* The

- 7 -

Jespersens then moved to continue argument on their preliminary objections until February of 2022.

Next, on December 8, 2021, Mr. Daugharthy signed the Jespersens' deed containing Mr. Hendricks' metes and bounds in an attempt to convey the narrow triangle to the Jespersens. *See* Daugharthy-to-Jespersens Deed at 1, Warren County Deed Book 3040 at 259.

On January 18, 2022, before the date of argument on the preliminary objections, the Bogniaks filed an amended complaint. The Jespersens filed an answer to the amended complaint and "asserted for the first time that they had obtained a conveyance from [Mr.] Daugharthy . . . purporting to convey good title to" the narrow triangle. Trial Court Opinion, 10/3/24, at 2.

Five months later, the Jespersens commenced a separate action seeking a preliminary injunction to bar the Bogniaks from entering the narrow triangle. *See Jespersen v. Bogniak*, No. 212-2022 (C.C.P. Warren 2022). Following a hearing, the trial court denied the preliminary injunction. "There was no further action at [that] docket . . . ." Trial Court Opinion, 10/3/24, at 3.

Thereafter, the Bogniaks pleaded their response to the Jespersens' new matter in this lawsuit. They claimed the narrow triangle "had already been conveyed to [their] predecessors in title and, ultimately, to them, and the [Daugharthy-to-Jespersens] Deed conveyed no interest in and to the disputed parcel." *Id.* The Bogniaks asked the trial court to declare the Daugharthy-to-Jespersens Deed a legal nullity.

The case proceeded to a non-jury trial. After both parties presented their witnesses and evidence, the trial court entertained closing arguments.

Regarding the issue of title to the narrow triangle, the Jespersens made only one argument. They claimed that the deeds in the Bogniaks' chain of title were clear and unambiguous, because Attorney Eaton could not have made a scrivener's error. In their view, the metes and bounds in the Bogniaks' deed controlled the outcome of the case.

The Jespersens' counsel argued:

> This is an action in quiet title, which requires the [Bogniaks] to prove . . . their title, based on their title, not on any flaws in the title of the [Jespersens] in this case.
>
> So, has Mr. Bogniak established that he owns this [narrow triangle]? And the answer, in my mind, is no, he hasn't, because it is specifically excepted and reserved from the parcel of land that he bought from Dawn Lumber . . . and [Mr. Bogniak is] basically here denigrating his own deed.
>
> The fact that [the narrow triangle] wasn't excepted and reserved in the other deeds, it was not necessary. [The Daugharthys] didn't need any reason to except and reserve it, but apparently, they did in this deed. It's very clearly set forth.
>
> It was done by a very reputable attorney, [Pete] Eaton. We all - - well, I think we all do know him, know his work. Very reputable attorney, and he specifically excepted and reserved this parcel of land in the deed to Ellington Hardwood and continues on in the deed to Mr. Bogniak. Now, it doesn't seem to be any more or less than that.

N.T., 6/10/24, at 286-87.

The trial court rejected the Jespersens' interpretation that the deeds in the Bogniaks chain of title were clear and unambiguous and free of scrivener's

error. Opining from the bench, the court explained that the case presented two issues: "Did the deed into the Bogniaks convey the disputed 1.56 acre or parcel; and, second, if it did not, where is the five-rod jog?" *Id.* at 293.

First, the trial court found that Attorney Eaton's draftsmanship "created ambiguity and obvious inconsistency in the deed description, because the metes-and-bounds description did not include that . . . 1.56 acres which is, in fact, south of Big Four Road . . . ." *Id.* at 294. "If the call that has the five-rod jog . . . is the accurate one, then it wasn't a conveyance of all property south of the Big Four Road." *Id.* "So, we've got a good, old-fashioned discrepancy in the deed." *Id.*

The court then resolved the discrepancy using the rules of construction for ambiguous deeds. It explained, "Courses and distances in a deed must give way to monuments on the ground." *Id.* at 295. Moreover, "Where the calls for the location of boundaries to land are inconsistent, other things being equal, resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries." *Id.* The court also observed that it must "attempt to ascertain what the intent of the parties, primarily the grantor[s], was in preparing this deed, [particularly] that conclusory statement . . . 'being all that portion lying southerly of the Big Four Road' which was previously conveyed to the Daugharthys." *Id.* at 296.

Based on all these factors, the trial court found that that statement was the strongest evidence of the Daugharthys' intent in 1980 – *i.e.*, that the "Daugharthys didn't intend to keep" the narrow triangle. *Id.* at 298. "Nobody

involved in this case thought that was the intent back when they sold Ellington Hardwood this property." *Id.* And there was "absolutely nothing [of record] indicating what could have been the cause of this jog in the description." *Id.* Thus, the Bogniaks proved "that the conveyance to them . . . convey[ed] all the property south of Big Four Road including the triangular strip in question . . . ." *Id.* at 299.[4]

The trial court therefore entered a non-jury decision "in favor of the Bogniaks and their claim to quiet title to that 1.56-acre strip." *Id.* It also declared that the Daugharthy-to-Jespersens Deed was null and void. *See id.* at 302.

The Jespersens filed post-trial motions, seeking judgment as a matter of law. The trial court denied relief, and this timely appeal followed.

The Jespersens raise two appellate issues as follows:

1. Did the trial court err, as a matter of law, in awarding the Bogniaks the triangular parcel of land when they were not in possession of the property, the property was not in dispute, and the property was not an area of uncertain title as it had been conveyed by the true owner, Erik Daugharthy, to the Jespersens?

2. Did the trial court err, as a matter of law, when it created an ambiguity as to the intention of the Bogniaks' predecessors in title where the description of the Bogniak land has been consistent for over 40 years which excluded

---

[4] This ruling rendered the question of where to place the northern line of the narrow triangle moot. Nevertheless, the trial court offered as *orbiter dictum* that, if it had reached the secondary issue, it would have found the survey of Mr. Hendricks to be the more accurate one for locating the northernmost line of the narrow triangle.

the triangular parcel which became vested in Erik
Daugharthy and was conveyed by him to the Jespersens?

Jespersens' Brief at 5. We dispose of each issue in turn.

First, the Jespersens claim that the Bogniaks brought the wrong form of action. According to the Jespersens, "A review of the complaint discloses that it does not contain an allegation by the Bogniaks that they own the property west of their east line to the Jespersen property." *Id.* at 11. However, they offer no citation to the record or reproduced record anywhere in their brief, and the Jespersens ignore the fact that the Bogniaks filed an amended complaint. Thus, the original complaint is not the operative pleading in this case.

They then offer a lengthy review of the facts seen in the light most favorable to themselves. *See id.* at 11-14. The Jespersens contend, for the first time on appeal, that they "cultivated the land with some shrubs and mowed the grass and used it for parking [which in their view] is substantially more than the Bogniaks who made no claim of actual possession." *Id.* at 14.

They argue that the trial court should not have allowed the quiet-title action to proceed, because the trial court supposedly concluded that the Bogniaks were in possession of the narrow triangle. *See id.* at 14-15. They assert that the Bogniaks could not maintain an action for quiet title without establishing that they maintained a residence on the triangle, cultivated the triangle, enclosed the triangle, improved the triangle, or paid property taxes on it. *See id.* at 15.

The Jespersens did not raise any of these issues at the time of trial or during their closing argument to challenge the Bogniaks' action for quiet title. *See* N.T., 6/10/24, at 286-87. The only argument that the Jespersens made concerning the Bogniaks' title was that the metes and bounds in their deed excluded the narrow triangle. Thus, the Jespersens did not seek judgment, as a matter of law, at the trial based on the theory that the Bogniaks could not maintain an action for quiet title due to lack of possession of the narrow triangle. As a result, the trial court did not opine on this question when it issued its opinion and non-jury decision from the bench.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." ***Trigg v. Children's Hosp. of Pittsburgh of UPMC***, 229 A.3d 260, 269 (Pa. 2020).

"Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a).[5] Thus, we dismiss the Jespersens' argument that the Bogniaks brought the incorrect form of action (quiet title, rather than ejectment) as waived.

_____

[5] We also note the Jespersens claim in the argument section of their brief that the trial court denied their preliminary objections. However, they provide no citation to the record or reproduced record where such a ruling by the trial court occurred. Furthermore, the Bogniaks filed an amended complaint that mooted the Jespersens' preliminary objections. Thus, any pleading deficiency in the Bogniaks' inoperative, original complaint is irrelevant. Also, even if the Jespersens had renewed their preliminary objections to the amended, operative complaint, they did not include any claims of pre-trial error in their post-trial motion or their Rule 1925(b) statement. Thus, we find that the Jespersens waived any argument concerning the form of the action on those grounds as well.

- 13 -

The remainder of the Jespersens' argument asserts that the deeds into the Bogniaks are clear and unambiguous. They rely exclusively upon Attorney Eaton's metes and bounds, beginning in the 1980 Daugharthy-to-Ellington Hardwood Deed, to contend that none of the deeds in the chain of title conveyed the narrow triangle down to the Bogniaks.

"Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law." *Kennedy v. Consol Energy Inc.*, 116 A.3d 626, 640 (Pa. Super. 2015). "It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder." *Id.* Our test is "not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion." *Id.*

"Upon appeal of a non-jury trial [decision], we consider the evidence in the light most favorable to the [non-jury decision] winner . . . ." *Medlock v. Chilmark Home Inspections, LLC*, 195 A.3d 277, 287–88 (Pa. Super. 2018). Thus, our scope of review in this appeal is limited to the evidence from the trial that favors the Bogniaks. Accordingly, the Jespersens misapply our scope of review in their appellate brief by viewing the facts in the light most favorable to themselves, *i.e.*, the losers of the non-jury decision.

In the Jespersens' view of the facts, for over 40 years, the narrow triangle remained the property of the Daugharthys, even though the

Daugharthys had no idea the narrow triangle existed, paid no taxes on it, did not expressly reserve ownership of the triangle, and made no use of the triangle. The Jespersens' claim that the Daugharthys intentionally but secretly reserved ownership of a narrow triangle that they did not even know existed for over 40 years is simply nonsensical. Therefore, the trial court's rational rejection of the Jespersens' view of the facts is unassailable on appeal. **See Kennedy**, **supra**.

As mentioned above, the trial court found an ambiguity in Attorney Eaton's drafting of the 1980 deed (and repetition of that ambiguity down to the Bogniaks), because his metes and bounds created a narrow triangle between the Jespersen and Ellington Hardwood properties that no one realized was there. Furthermore, the metes and bounds did not comport with Attorney Eaton's other language in the deed – namely, that the Daugharthys conveyed to Ellington Hardwood all of the Daugharthys' land lying south of Big Four Road.

Because the accidentally excluded narrow triangle was south of Big Four Road, the metes and bounds and the statement of the Daugharthys' intent to transfer all their property south of Big Four Road could not possibly both be true. Hence, the trial court rationally concluded that the metes and bounds contained a latent ambiguity, in that (when Dawn Lumber and the Bogniaks finally had the land surveyed), they discovered that the metes and bounds did not comport with the reality on the ground.

The trial court logically and correctly interpreted the deeds in the Bogniaks' chain of title as containing a latent ambiguity. The trial court also correctly applied the rules of ambiguous deed construction to effectuate the most likely intent of the Daugharthys, *i.e.*, to sell all of their property south of Big Four Road to Ellington Hardwood.

We dismiss the first claim of error as affording the Jespersens no appellate relief.

As for their second and final appellate issue, the Jespersens failed to preserve it for our review.

Upon receiving the Jespersens' notice of appeal, the trial court issued them an order directing them to file a concise statement of errors complained of on appeal, under Pennsylvania Rule of Appellate Procedure 1925. Rule 1925 is very clear and very strict.

"The Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). This allows the trial court to author a well-reasoned 1925(a) Opinion that addresses each of the issues that appellants plan to argue before the appellate court. A meaningful 1925(a) Opinion is critical "to meaningful and effective appellate review. Rule 1925 is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal." ***Commonwealth v. Lord***, 719 A.2d 306, 308 (Pa. 1998).

Thus, "in order to preserve their claims for appellate review, appellants must comply whenever the trial court orders them to file a Statement of [Errors] Complained of on Appeal pursuant to Rule 1925." *Id.* at 309. "Any issues not raised in a 1925(b) statement will be deemed waived." *Id.*

Here, the Jespersens attempted to play fast and loose with Rule 1925(b) by switching the call of the question for their second appellate issue in their brief from the call of the question in their 1925(b) statement. The issue that they identified in the 1925(b) statement was, "The trial court committed an error of law when it created an ambiguity by referring to the property subsequently conveyed by [Mr. Daugharthy] to the Jespersens . . . as "an area of uncertain title" when title was clearly vested in the Jespersens." Rule 1925(b) Statement at 1. The trial court issued its 1925(a) Opinion to address that allegation of error.

However, the issue the Jespersens raise on appeal changes the grounds of alleged error. They now claim that "the trial court err[ed], as a matter of law, when it created an ambiguity as to the intention of the Bogniaks' predecessors in title where the description of the Bogniak land has been consistent for over 40 years which excluded the triangular parcel which became vested in Erik Daugharthy and was conveyed by him to the Jespersens[.]" Jespersens' Brief at 5.

Hence, they shifted the claim of error from the trial court's statement that the narrow triangle was "an area of uncertain title" to a claim that the deeds consistently excluded the narrow triangle for over 40 years. These are

not the same issue, because the issue as framed in the 1925(b) statement drew the trial court's attention to the verbiage it used to describe the narrow triangle, rather than the language of the deeds for 40 years. Rule 1925(b) does not permit appellants to depart from the issues they raise in their 1925(b) statements by rephrasing the call of the question in this Court and thereby recast the issue after the trial court has issued its 1925(a) Opinion to defend its judgment.

Therefore, we conclude that the Jespersens did not include their second appellate issue in their Rule 1925(b) statement. We dismiss their second and final appellate issue as waived.[6] *See Lord*, *supra*; *see also* Pa.R.A.P. 1925(b)(4)(vii).

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

7/3/2025

---

[6] Even if preserved, we would find no fault in the trial court's resolution of the deed discrepancy. The trial court concluded that the original intent of the Daugharthys was to convey all the land south of Big Four Road to the Bogniaks predecessor-in-interest. Thus, any subsequent deeds over the next 40 years conveyed all the land south of Big Four Road to the grantees, ultimately including the Bogniaks.

- 18 -